**Deficient per Rule 20-203(d). Unless corrected, not a valid pleading or paper**

## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OOF MARYLAND

| | |
|---|---|
| **MONICA BANKS** on her own behalf and on behalf of her minor child L.B. <br> 5345 Columbia Road <br> Apt. H <br> Columbia, MD 21044 <br><br> **Plaintiffs,** <br><br> vs. <br><br> **MICHAEL J. MARTIRANO** in his capacity as Howard County Public School System Superintendent <br> 10910 Clarksville Pike <br> Ellicott City, MD 21042 <br><br> and <br><br> **THE HOWARD COUNTY BOARD OF EDUCATION** <br> Serve On:  Mavis Ellis (Chair of the Board) <br> 10910 Clarksville Pike <br> Ellicott City, MD 21042 <br><br> and <br><br> **RUNNING BROOK ELEMENTARY SCHOOL** <br> Serve On:  Anthony Esposito (Principal) <br> 5215 W Running Brook Rd <br> Columbia, MD 21044 <br><br> and <br><br> **HOWARD COUNTY PUBLIC SCHOOL SYSTEM** <br> Serve On: Michael J. Martirano (Superintendent of Schools) <br> 10910 Clarksville Pike <br> Ellicott City, MD 21042 <br><br> and | C-13-CV-19-001189 <br> **Civil Action No.** _____ <br><br><br> **COMPLAINT FOR ASSAULT, BATTERY, AND THE VIOLATION OF VARIOUS CIVIL RIGHTS** <br><br><br> **Jury Trial Demanded** |

1

**ANTHONY ESPOSITO** in both his
capacity as an employee (present or
former) of Howard County Public School
System and in his individual capacity
5215 W. Running Brook Road
Columbia, MD 21044

and

**KELLY MARIE ZAWADA** in both her
capacity as an employee (present or
former) of Howard County School System
and in her individual capacity
5223 Hermit Path
Columbia, MD 21044-0000

and

**RICH GIBSON** in his capacity as Howard
County State's Attorney and his individual
capacity
Carroll Building – Second Floor
3450 Courthouse Drive
Ellicott City, MD 21043

and

**OFFICE OF THE STATE'S
ATTORNEY FOR HOWARD
COUNTY**
Serve On:  Rich Gibson (State's Attorney)
3450 Court House Drive
Second (2nd) Floor
Ellicott City, MD 21043

and

**HOWARD COUNTY OFFICE OF
HUMAN RIGHTS**
Serve On:  Janssen Evelyn (Acting
Administrator)
9820 Patuxent Woods Drive, Suite 237
Columbia, MD 21046

and

2

**HOWARD COUNTY POLICE
DEPARTMENT**
**Serve On:** Lisa D. Myers (Chief of Police)
3410 Court House Drive
Ellicott City, MD 21043

and

**UNKNOWN HOWARD COUNTY
POLICE DEPARTMENT POLICE
OFFICER** in both his capacity as a
Howard County Police Officer and his
individual capacity
3410 Court House Drive
Ellicott City, MD 21043

        **Defendants.**

Plaintiff, Monica Banks ("Plaintiff" or "Ms. Banks"), on her own behalf and on behalf of

her minor child L.B. for her complaint against the defendants named in the caption above, avers

on knowledge, information and belief:

### STATEMENT OF CASE

1.     This is a civil rights action challenging the policies and practices of the Howard

County Public School System ("HCPSS") as discriminatory in their impact and as discriminatory

in their application as to African American students and parents.

2.     The students at Running Brook Elementary School are majority minority and are

grossly mistreated, including generally being spoken to in such a manner as to presume that they

are slow, developmentally delayed, and/or behaviorally challenged.

3.     This is both a civil rights and tort action challenging the actions taken by lunch

monitor, Kelly Marie Zawada ("Ms. Zawada"), who was then-employed at Running Brook

Elementary School ("Running Brook") as well as its principal, Anthony Esposito ("Principal

Esposito") when Ms. Zawada – with little or no verbal request – aggressively grabbed both arms of then-third grade (female) student L.B. in an attempt to move her to an assigned lunch seat. *See* the video recording of the incident attached hereto as **Exhibit A** (herein referred to as the "Incident").

4.      When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration; double-backed, aggressively grabbed L.B.'s arms a second time; dragged her from the table; swung her around; dragged her to a different lunch table; dropped her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression (the "Incident"). *See id.*

5.      Although Ms. Banks was told that Ms. Zawada was terminated for the Incident, Ms. Zawada was not, in fact, terminated; rather, Ms. Zawada – a nonexempt part time employee – was treated with all the rights and privileges of an exempt employee under to the bargaining agreement between HCPSS and the Teacher's Union and placed on administrative leave pending the outcome of an investigation.  However, HCPSS, did not investigate the Incident, relying instead upon the outcome of an investigation which was supposedly underway by the Howard County Police Department ("HCPD") and the Office of the State's Attorney for Howard County, Maryland ("State's Attorney").

6.      Unknown HCPD Officer did not timely obtain a copy of the video taken in the matter, nor did he properly prepare the charge against Ms. Zawada.

7.      Nevertheless, Ms. Zawada was charged with Second-Degree Assault; however, the Office   of   the   State's   Attorney,   under   the   leadership   of   State's   Attorney Rich Gibson refused to prosecute the Second-Degree Assault charge which, admittedly, he

4

understood held validity; rather, it was his belief that Ms. Zawada's termination was enough of a punishment for the illegal act.[1]

8.     According to Howard County Policy 1010 ("Policy 1010"):

The Board of Education is committed to providing an education and work environment that is free from discrimination, fosters equitable opportunities, and values diversity and commonality.  The Board prohibits discrimination on the basis of race, color, creed, national origin . . . or socioeconomic status in the educational program, including co-curricular and extra-curricular activities, and in the workplace.  The Board recognizes its responsibility to promote worth, dignity, respect and safety and therefore prohibits discrimination through curriculum, instruction, professional development, and resource selection.   Employees, students, and third parties share responsibility for the health, safety, and general welfare of students and for creating and ensuring an environment free from discrimination.    Employees, students, and third parties may be subject to disciplinary action or consequences for discriminatory behavior even when the behavior does not rise to the level of discrimination as defined.

*See* **Exhibit C**.  Policy 1010 is not being honored, nor adhered to in Howard County Public Schools.  Rather, there is a pervasive, persistent, illegal and unjust culture of discrimination so deeply-rooted in the Howard County Public School culture that no level of reporting or administrative process can be trusted to remedy the injuries these named and unnamed Plaintiffs are suffering on any average school day.

9.     Ms. Banks filed an official complaint of discrimination with the Howard County Office of Human Rights ("OHR") who initially declared that it would file an official charge of discrimination by and through its investigator Davis Ruiz ("Mr. Ruiz"); however, a few days later Mr. Ruiz contacted Ms. Banks by and through her undersigned counsel to inform her that

---

[1] Again, Ms. Zawada was never terminated.

OHR would no longer be pursuing a charge of discrimination because it did not have the power to investigate a complaint alleged regarding a minor child, leaving Ms. Banks with little recourse in resolving the matter short of filing the instant litigation.

## FACTUAL BACKGROUND

10.     Ms. Banks and her daughter, L.B., are both African American females.

11.     Now, and at the time of the Incident, L.B. was nine (9) years old.

12.     One June 10, 2019, Kelly Marie Zawada ("Ms. Zawada"), who was then-employed at Running Brook as a lunch monitor – with little or no verbal request – aggressively grabbed both arms of the then-third grade female in an attempt to move her to an assigned lunch seat. When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration, double-backed, aggressively grabbed Lyric's arms a second time, dragged her from the table, swung her around, dragged her to a different lunch table, dropped her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression.

13.     In response, Principal Esposito found Ms. Zawada's behavior to be concerning enough to report the incident to Ms. Banks, but did not follow the procedures outlined in Howard County Public School System ("HCPSS") Policy 1030 ("Policy 1030") which requires that he report any and all child abuse, including child abuse exacted by a school employee to law enforcement and/or the Department of Social Services.

14.     When Ms. Banks viewed the footage the following day, she left Principal Esposito's office and contacted colleague and criminal justice reform advocate Topeka Sam ("Advocate Sam") to explain what she witnessed happen to her daughter at the hands of

Ms. Zawada. Advocate Sam told her to call local law enforcement to report the abuse. Ms. Banks did so and local law enforcement reported to Running Brook's campus to investigate.

15.     On the basis of the video and out of a particular level of concern regarding the several seconds Ms. Zawada took to pause and consider her next act before aggressively grabbing Lyric, the officer charged Ms. Zawada with second degree assault.

16.     Sometime thereafter, Ms. Banks was informed that Ms. Zawada had been terminated as a lunch monitor at Running Brook Elementary School. However, Ms. Zawada was not, in fact, terminated. Rather, she was allegedly put on administrative leave pending the outcome of an external and internal investigation.

17.     Despite the outcome of either investigation, Ms. Zawada was granted liberal access to Running Brook and no steps were taken to ensure that L.B. did not come into contact with her at the school.

18.     Ms. Zawada's presence at Running Brook torments nine-year old L.B.as does Ms. Zawada's son who recently targeted and taunted L.B.and her friends at a trunck-or-treat event at the school by setting out to and effectuating a flagrant heist of the girls' candy which concerned Ms. Banks because it seemed predatory, particularly given that Ms. Zawada's oldest son has at least once been disciplined by HCPSS for racially motivated and discriminatory behavior and/or language.

19.     L.B. is not just scared to attend school, but is also emotionally wounded and constantly concerned that she is unsafe.

20.     L.B. has voiced concerns to her mother that Ms. Zawada is also assassinating her character with the teachers and staff at Running Brook. Although L.B. has experienced and her mother has witnessed frequent and blatant mistreatment of the majority minority population at

7

Running Brook, as of late, the behavior has become more outrageous and more specifically tailored toward L.B. For example, a few weeks ago, the nurse refused to allow L.B.to use her inhaler after a sporting activity and, but for the insistence of the coach, the nurse would not have permitted her to use the prescribed medication with no explanation for the refusal, simply "no."[2]

21.     The Incident is only one in a long list of ongoing harassing, racist and discriminatory behaviors at Running Brook. Consequently, Ms. Banks has had to take time off from her business tasks to frequent the School, visit Lyric's classroom, and sit with her at lunch. She is also constantly forced to communicate with the School's administration as to her concerns regarding, not only the treatment of Lyric, but in advocacy for the other brown and black children whose right to a free education is being infringed upon and impeded by persistent discriminatory behavior at the school.

22.     For example, on or about October 4, 2019, Ms. Banks witnessed a teacher screaming at the children simply because they were requesting an additional snack. School starts at 9:20 a.m. and fourth grade lunch does not begin until 1:45 p.m. The children are permitted one snack at approximately 11:30 a.m. (which they bring from home) and have twenty (20) minutes to eat their snacks; however, they are not allowed to go back to get an additional snack even within the twenty (20) minute timeframe. The children are left hungry for an additional two (2) hours until lunch time and not permitted an afternoon snack. Then, they are screamed at and disciplined for requesting something else to eat. There have been countless other times that Ms. Banks has witnessed teachers screaming at the students.

23.     The children are also denied access to the bathroom and to water breaks even though their requests are, more often than not, legitimate to the point where children have been

---

[2] The nurse refused to treat L.B. on more than one occasion.

forced to have accidents and then not permitted to go to the nurse to change and left to sit in the classroom in their soiled clothing.

24.    The brown children are also over-disciplined compared to their white counterparts and are forced to admit to wrongs that they did not actually commit in order to receive discipline.

25.    The brown children are more frequently sent to the office and more often denied access to the bathroom, water, snacks and other basic liberties and freedoms to which all human beings are entitled.

26.    The over-aggressive, discipline-focused, discriminatory manner by which the brown and black students are treated puts the brown and black children in a position where they have to defend themselves to their teachers, causing them to lash out in ways that are uncharacteristic – behaviors which they are again disciplined on the basis of.

27.    The students are also over-diagnosed, over treated for mental health and behavioral issues, and under afforded opportunities for advancement. In fact, the administrators and teachers have communicated that L.B. is a gifted and talented, advanced communicator and student. Still, they pressured her mother into agreeing to allow her to work with a behavioral specialist instead of putting her into a gifted and talent program. Both the specialist and Ms. Banks requested that the school test L.B. to make sure that she is on grade-level. Those requests went un-responded to. When Ms. Banks further requested information, she was told that L.B.was now being assessed as behind grade level, despite excellent, above-average marks on her report card and satisfactory marks on her most recent progress report (the highest mark available). Ms. Banks was provided with no information and no means or tools to rely upon in order to bring L.B. up to speed if she is, in fact, behind, rather than ahead of her peers.

28.     There are several other events and repeated acts which have taken and continue to take place at the school and to L.B. which one may consider to be "dog-whistle" racism. That is to say that L.B. understands she is being mistreated when the event occurs and/or that she is witnessing mistreatment, but given her age and experience she does not know why she is being mistreated or understand the emotional impact of the discriminatory environment she is expected, not only to tolerate, but to submit.

## CLAIMS

In consideration of the facts, laws and theories of law enumerated herein, Ms. Banks alleges the following claims:

### COUNTS I, II, III
**Maryland Constitution, Declaration of Rights, Art. 24 and 42 U.S.C. § 1988 Claim for the unlawful deprivation of L.B.'s right to liberty and to be free of unlawful seizures of his freehold, liberties or privileges; Misrepresentation, Fraud and Deceit (w/ Malice); Civil Conspiracy**

*(All Defendants)*

29.     Ms. Banks incorporates the allegations made in Paragraphs 1-28 of this Complaint as if fully stated herein.

30.     Ms. Banks asserts this claim against each Defendant, in both their official and personal capacities.

31.     Ms. Zawada – with little or no verbal request – aggressively grabbed both arms of then-third grade (female) student L.B. in an attempt to move her to an assigned lunch seat. *See id.*

32.     When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration; double-backed, aggressively grabbed L.B.'s arms a second time; dragged her from the table; swung her around; dragged her to a different lunch table; dropped

10

her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression (the "Incident"). *See id*.

33.     No man (woman or child) ought to be taken or imprisoned or disseized of her freehold, liberties, or privileges. *See* Md. Decl. of Rights, Art. 24.

34.     No man (woman or child) out to be deprived of his life, liberty or property, but by the (lawful) judgment of his peers, or by the Law of the land. *See id*.

35.     There was no lawful reason to grab and assault L.B. in the manner in which Ms. Zawada did so.

36.     The Principal at Running Brook Elementary School, HCPSS administrators, Howard County Police and the Office of the State's Attorney sanctioned Ms. Zawada's action in their failure to take action against Zawada, operating collectively to prevent legal action from being taken against either Ms. Zawada and HCPSS, operating at all times to the benefit of HCPSS and Howard County Government rather than in the best interest of the minor child.

37.     The deprivation of L.B.'s rights was committed with malice as it was motivated by an evil motive, the intent to injure, ill will and/or fraud.

38.     The deprivation of L.B.'s rights subsequent to the incident amounted to consiperacy as the each of the named Defendants conspired to prevent legal action being effective against Ms. Zawada and HCPSS.

39.     As a result of the Defendants' actions, Ms. Banks and L.B. suffered damages, including emotional trauma, distress, physical injuries, and damage to their reputations.

### COUNTS IV and V
### Assault and Battery

*(Kelly Zawada)*

11

40.     Ms. Banks incorporates the allegations made in Paragraphs 1-39 of this Complaint as if fully stated herein.

41.     Ms. Banks asserts this claim against all **Kelly Zawada,** in both her official and personal capacities.

42.     Ms. Zawada – with little or no verbal request – aggressively grabbed both arms of then-third grade (female) student L.B. in an attempt to move her to an assigned lunch seat. *See id.*

43.     When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration; double-backed, aggressively grabbed L.B.'s arms a second time; dragged her from the table; swung her around; dragged her to a different lunch table; dropped her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression (the "Incident"). *See id.*

44.     The attack was intentional and executed without L.B.'s consent. *See id.*

45.     The attack was both harmful and offensive, causing physical pain, injury and illness, as well as offending L.B.'s reasonable sense of personal dignity. *See id.*

### COUNT VI
### Intentional Infliction of Emotional Distress

#### (*All Defendants*)

46.     L.B. incorporates the allegations made in Paragraphs 1-45 of this Complaint as if fully stated herein.

47.     L.B. asserts this claim against all **Defendants,** in both their official and individual capacities.

48.     Ms. Zawada – with little or no verbal request – aggressively grabbed both arms of then-third grade (female) student L.B. in an attempt to move her to an assigned lunch seat. *See id.*

12

49.     When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration; double-backed, aggressively grabbed L.B.'s arms a second time; dragged her from the table; swung her around; dragged her to a different lunch table; dropped her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression (the "Incident"). *See id.*

50.     In response, Principal Esposito found Ms. Zawada's behavior to be concerning enough to report the incident to Ms. Banks, but did not follow the procedures outlined in Howard County Public School System ("HCPSS") Policy 1030 ("Policy 1030") which requires that he report any and all child abuse, including child abuse exacted by a school employee to law enforcement and/or the Department of Social Services.

51.     When Ms. Banks viewed the footage the following day, she left Principal Esposito's office and contacted colleague and criminal justice reform advocate Topeka Sam ("Advocate Sam") to explain what she witnessed happen to her daughter at the hands of Ms. Zawada. Advocate Sam told her to call local law enforcement to report the abuse. Ms. Banks did so and local law enforcement reported to Running Brook's campus to investigate.

52.     On the basis of the video and out of a particular level of concern regarding the several seconds Ms. Zawada took to pause and consider her next act before aggressively grabbing Lyric, the officer charged Ms. Zawada with second degree assault.

53.     Sometime thereafter, Ms. Banks was informed that Ms. Zawada had been terminated as a lunch monitor at Running Brook Elementary School. However, Ms. Zawada was not, in fact, terminated. Rather, she was allegedly put on administrative leave pending the outcome of an external and internal investigation.

13

54.     Despite the outcome of either investigation, Ms. Zawada was granted liberal access to Running Brook and no steps were taken to ensure that L.B. did not come into contact with her at the school.

55.     Ms. Zawada's presence at Running Brook torments nine-year old L.B.as does Ms. Zawada's son who recently targeted and taunted L.B.and her friends at a trunck-or-treat event at the school by setting out to and effectuating a flagrant heist of the girls' candy which concerned Ms. Banks because it seemed predatory, particularly given that Ms. Zawada's oldest son has at least once been disciplined by HCPSS for racially motivated and discriminatory behavior and/or language.

56.     L.B. is not just scared to attend school, but is also emotionally wounded and constantly concerned that she is unsafe.

57.     L.B. has voiced concerns to her mother that Ms. Zawada is also assassinating her character with the teachers and staff at Running Brook. Although L.B. has experienced and her mother has witnessed frequent and blatant mistreatment of the majority minority population at Running Brook, as of late, the behavior has become more outrageous and more specifically tailored toward L.B. For example, a few weeks ago, the nurse refused to allow L.B.to use her inhaler after a sporting activity and, but for the insistence of the coach, the nurse would not have permitted her to use the prescribed medication with no explanation for the refusal, simply "no."[3]

58.     The Incident is only one in a long list of ongoing harassing, racist and discriminatory behaviors at Running Brook. Consequently, Ms. Banks has had to take time off from her business tasks to frequent the School, visit Lyric's classroom, and sit with her at lunch. She is also constantly forced to communicate with the School's administration as to her

---

[3] The nurse refused to treat L.B. on more than one occasion.

concerns regarding, not only the treatment of Lyric, but in advocacy for the other brown and black children whose right to a free education is being infringed upon and impeded by persistent discriminatory behavior at the school.

59.    For example, on or about October 4, 2019, Ms. Banks witnessed a teacher screaming at the children simply because they were requesting an additional snack.  School starts at 9:20 a.m. and fourth grade lunch does not begin until 1:45 p.m.  The children are permitted one snack at approximately 11:30 a.m. (which they bring from home) and have twenty (20) minutes to eat their snacks; however, they are not allowed to go back to get an additional snack even within the twenty (20) minute timeframe.  The children are left hungry for an additional two (2) hours until lunch time and not permitted an afternoon snack.  Then, they are screamed at and disciplined for requesting something else to eat.  There have been countless other times that Ms. Banks has witnessed teachers screaming at the students.

60.    The children are also denied access to the bathroom and to water breaks even though their requests are, more often than not, legitimate to the point where children have been forced to have accidents and then not permitted to go to the nurse to change and left to sit in the classroom in their soiled clothing.

61.    The brown children are also over-disciplined compared to their white counterparts and are forced to admit to wrongs that they did not actually commit in order to receive discipline.

62.    The brown children are more frequently sent to the office and more often denied access to the bathroom, water, snacks and other basic liberties and freedoms to which all human beings are entitled.

63.    The over-aggressive, discipline-focused, discriminatory manner by which the brown and black students are treated puts the brown and black children in a position where they

15

have to defend themselves to their teachers, causing them to lash out in ways that are uncharacteristic – behaviors which they are again disciplined on the basis of.

64.     The students are also over-diagnosed, over treated for mental health and behavioral issues, and under afforded opportunities for advancement.  In fact, the administrators and teachers have communicated that L.B. is a gifted and talented, advanced communicator and student.  Still, they pressured her mother into agreeing to allow her to work with a behavioral specialist instead of putting her into a gifted and talent program.  Both the specialist and Ms. Banks requested that the school test L.B. to make sure that she is on grade-level.  Those requests went un-responded to.  When Ms. Banks further requested information, she was told that L.B.was now being assessed as behind grade level, despite excellent, above-average marks on her report card and satisfactory marks on her most recent progress report (the highest mark available).  Ms. Banks was provided with no information and no means or tools to rely upon in order to bring L.B. up to speed if she is, in fact, behind, rather than ahead of her peers.

65.     There are several other events and repeated acts which have taken and continue to take place at the school and to L.B. which one may consider to be "dog-whistle" racism.  That is to say that L.B. understands she is being mistreated when the event occurs and/or that she is witnessing mistreatment, but given her age and experience she does not know why she is being mistreated or understand the emotional impact of the discriminatory environment she is expected, not only to tolerate, but to submit.

66.     The Incident and each subsequent incident, including refusing to prosecute Ms. Zawada, resulted in the infliction of severe emotional distress on L.B. and her mother.  The Defendants knew that such distress was substantially certain to result from his actions and acted recklessly and in deliberate disregard of a high probability that emotional distress would follow.

16

67.     As a result of the Defendants' individual and collective tortious actions, L.B. and her mother suffered damages, including emotional trauma, physical injury, distress, and damage to their reputations and the loss of his employment.

## COUNT VII and VIII
## Negligence and Gross Negligence

### (All Defendants)

68.     Ms. Banks incorporates the allegations made in Paragraphs 1-67 of this Complaint as if fully stated herein.

69.     Ms. Banks asserts this claim against all Defendants, in both their official and personal capacities.

70.     Ms. Zawada – with little or no verbal request – aggressively grabbed both arms of then-third grade (female) student L.B. in an attempt to move her to an assigned lunch seat. *See id.*

71.     When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration; double-backed, aggressively grabbed L.B.'s arms a second time; dragged her from the table; swung her around; dragged her to a different lunch table; dropped her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression (the "Incident"). *See id.*

72.     In response, Principal Esposito found Ms. Zawada's behavior to be concerning enough to report the incident to Ms. Banks, but did not follow the procedures outlined in Howard County Public School System ("HCPSS") Policy 1030 ("Policy 1030") which requires that he report any and all child abuse, including child abuse exacted by a school employee to law enforcement and/or the Department of Social Services.

73.     When Ms. Banks viewed the footage the following day, she left Principal Esposito's office and contacted colleague and criminal justice reform advocate Topeka Sam

("Advocate Sam") to explain what she witnessed happen to her daughter at the hands of Ms. Zawada. Advocate Sam told her to call local law enforcement to report the abuse. Ms. Banks did so and local law enforcement reported to Running Brook's campus to investigate.

74.    On the basis of the video and out of a particular level of concern regarding the several seconds Ms. Zawada took to pause and consider her next act before aggressively grabbing Lyric, the officer charged Ms. Zawada with second degree assault.

75.    Sometime thereafter, Ms. Banks was informed that Ms. Zawada had been terminated as a lunch monitor at Running Brook Elementary School. However, Ms. Zawada was not, in fact, terminated. Rather, she was allegedly put on administrative leave pending the outcome of an external and internal investigation.

76.    Despite the outcome of either investigation, Ms. Zawada was granted liberal access to Running Brook and no steps were taken to ensure that L.B. did not come into contact with her at the school.

77.    Ms. Zawada's presence at Running Brook torments nine-year old L.B.as does Ms. Zawada's son who recently targeted and taunted L.B.and her friends at a trunck-or-treat event at the school by setting out to and effectuating a flagrant heist of the girls' candy which concerned Ms. Banks because it seemed predatory, particularly given that Ms. Zawada's oldest son has at least once been disciplined by HCPSS for racially motivated and discriminatory behavior and/or language.

78.    L.B. is not just scared to attend school, but is also emotionally wounded and constantly concerned that she is unsafe.

79.    L.B. has voiced concerns to her mother that Ms. Zawada is also assassinating her character with the teachers and staff at Running Brook. Although L.B. has experienced and her

mother has witnessed frequent and blatant mistreatment of the majority minority population at Running Brook, as of late, the behavior has become more outrageous and more specifically tailored toward L.B. For example, a few weeks ago, the nurse refused to allow L.B. to use her inhaler after a sporting activity and, but for the insistence of the coach, the nurse would not have permitted her to use the prescribed medication with no explanation for the refusal, simply "no."[4]

80.    The Incident is only one in a long list of ongoing harassing, racist and discriminatory behaviors at Running Brook. Consequently, Ms. Banks has had to take time off from her business tasks to frequent the School, visit Lyric's classroom, and sit with her at lunch. She is also constantly forced to communicate with the School's administration as to her concerns regarding, not only the treatment of Lyric, but in advocacy for the other brown and black children whose right to a free education is being infringed upon and impeded by persistent discriminatory behavior at the school.

81.    For example, on or about October 4, 2019, Ms. Banks witnessed a teacher screaming at the children simply because they were requesting an additional snack. School starts at 9:20 a.m. and fourth grade lunch does not begin until 1:45 p.m. The children are permitted one snack at approximately 11:30 a.m. (which they bring from home) and have twenty (20) minutes to eat their snacks; however, they are not allowed to go back to get an additional snack even within the twenty (20) minute timeframe. The children are left hungry for an additional two (2) hours until lunch time and not permitted an afternoon snack. Then, they are screamed at and disciplined for requesting something else to eat. There have been countless other times that Ms. Banks has witnessed teachers screaming at the students.

---

[4] The nurse refused to treat L.B. on more than one occasion.

82.     The children are also denied access to the bathroom and to water breaks even though their requests are, more often than not, legitimate to the point where children have been forced to have accidents and then not permitted to go to the nurse to change and left to sit in the classroom in their soiled clothing.

83.     The brown children are also over-disciplined compared to their white counterparts and are forced to admit to wrongs that they did not actually commit in order to receive discipline.

84.     The brown children are more frequently sent to the office and more often denied access to the bathroom, water, snacks and other basic liberties and freedoms to which all human beings are entitled.

85.     The over-aggressive, discipline-focused, discriminatory manner by which the brown and black students are treated puts the brown and black children in a position where they have to defend themselves to their teachers, causing them to lash out in ways that are uncharacteristic – behaviors which they are again disciplined on the basis of.

86.     The students are also over-diagnosed, over treated for mental health and behavioral issues, and under afforded opportunities for advancement.  In fact, the administrators and teachers have communicated that L.B. is a gifted and talented, advanced communicator and student.  Still, they pressured her mother into agreeing to allow her to work with a behavioral specialist instead of putting her into a gifted and talent program.  Both the specialist and Ms. Banks requested that the school test L.B. to make sure that she is on grade-level.  Those requests went un-responded to.  When Ms. Banks further requested information, she was told that L.B.was now being assessed as behind grade level, despite excellent, above-average marks on her report card and satisfactory marks on her most recent progress report (the highest mark available).  Ms. Banks was provided

with no information and no means or tools to rely upon in order to bring L.B. up to speed if she is, in fact, behind, rather than ahead of her peers.

87.     There are several other events and repeated acts which have taken and continue to take place at the school and to L.B. which one may consider to be "dog-whistle" racism. That is to say that L.B. understands she is being mistreated when the event occurs and/or that she is witnessing mistreatment, but given her age and experience she does not know why she is being mistreated or understand the emotional impact of the discriminatory environment she is expected, not only to tolerate, but to submit.

88.     The Incident and each subsequent incident, including refusing to prosecute Ms. Zawad was negligent as to each Defendant.

89.     Defendants had a lawful duty to refrain from committing an assault and/or battery against his person and/or to engage in actions to rectify the behavior, including prosecuting Ms. Zawada.     Defendants actions, collectively and individually, resulted in a breach of the aforementioned duty.

90.     The tortious actions of Defendants L.B. and her mother to suffer damages, including physical injury, emotional trauma, distress, and damage to their reputation, the loss of his employment and loss of wages.

## COUNT IX
### Invasion of Privacy/False Light

*(all Defendants)*

91.     L.B. incorporates the allegations made in Paragraphs 1-90 of this Complaint as if fully stated herein.

92.     Ms. Banks asserts this claim against all Defendants, in both their official and individual capacities.

93.     Ms. Zawada – with little or no verbal request – aggressively grabbed both arms of then-third grade (female) student L.B. in an attempt to move her to an assigned lunch seat. *See id.*

94.     When L.B. resisted the unnecessary, unwarranted, and inappropriate force, Ms. Zawada paused in frustration; double-backed, aggressively grabbed L.B.'s arms a second time; dragged her from the table; swung her around; dragged her to a different lunch table; dropped her on the bench and walked away without so much as a simple inquiry into her welfare or well-being after the act of aggression (the "Incident"). *See id.*

95.     In response, Principal Esposito found Ms. Zawada's behavior to be concerning enough to report the incident to Ms. Banks, but did not follow the procedures outlined in Howard County Public School System ("HCPSS") Policy 1030 ("Policy 1030") which requires that he report any and all child abuse, including child abuse exacted by a school employee to law enforcement and/or the Department of Social Services.

96.     When Ms. Banks viewed the footage the following day, she left Principal Esposito's office and contacted colleague and criminal justice reform advocate Topeka Sam ("Advocate Sam") to explain what she witnessed happen to her daughter at the hands of Ms. Zawada. Advocate Sam told her to call local law enforcement to report the abuse. Ms. Banks did so and local law enforcement reported to Running Brook's campus to investigate.

97.     On the basis of the video and out of a particular level of concern regarding the several seconds Ms. Zawada took to pause and consider her next act before aggressively grabbing Lyric, the officer charged Ms. Zawada with second degree assault.

98.     Sometime thereafter, Ms. Banks was informed that Ms. Zawada had been terminated as a lunch monitor at Running Brook Elementary School. However, Ms. Zawada was

22

not, in fact, terminated. Rather, she was allegedly put on administrative leave pending the outcome of an external and internal investigation.

99.    Despite the outcome of either investigation, Ms. Zawada was granted liberal access to Running Brook and no steps were taken to ensure that L.B. did not come into contact with her at the school.

100.    Ms. Zawada's presence at Running Brook torments nine-year old L.B.as does Ms. Zawada's son who recently targeted and taunted L.B.and her friends at a trunck-or-treat event at the school by setting out to and effectuating a flagrant heist of the girls' candy which concerned Ms. Banks because it seemed predatory, particularly given that Ms. Zawada's oldest son has at least once been disciplined by HCPSS for racially motivated and discriminatory behavior and/or language.

101.    L.B. is not just scared to attend school, but is also emotionally wounded and constantly concerned that she is unsafe.

102.    L.B. has voiced concerns to her mother that Ms. Zawada is also assassinating her character with the teachers and staff at Running Brook. Although L.B. has experienced and her mother has witnessed frequent and blatant mistreatment of the majority minority population at Running Brook, as of late, the behavior has become more outrageous and more specifically tailored toward L.B. For example, a few weeks ago, the nurse refused to allow L.B.to use her inhaler after a sporting activity and, but for the insistence of the coach, the nurse would not have permitted her to use the prescribed medication with no explanation for the refusal, simply "no."[5]

103.    The Incident is only one in a long list of ongoing harassing, racist and discriminatory behaviors at Running Brook. Consequently, Ms. Banks has had to take time off

---

[5] The nurse refused to treat L.B. on more than one occasion.

from her business tasks to frequent the School, visit Lyric's classroom, and sit with her at lunch. She is also constantly forced to communicate with the School's administration as to her concerns regarding, not only the treatment of Lyric, but in advocacy for the other brown and black children whose right to a free education is being infringed upon and impeded by persistent discriminatory behavior at the school.

104.    For example, on or about October 4, 2019, Ms. Banks witnessed a teacher screaming at the children simply because they were requesting an additional snack. School starts at 9:20 a.m. and fourth grade lunch does not begin until 1:45 p.m. The children are permitted one snack at approximately 11:30 a.m. (which they bring from home) and have twenty (20) minutes to eat their snacks; however, they are not allowed to go back to get an additional snack even within the twenty (20) minute timeframe. The children are left hungry for an additional two (2) hours until lunch time and not permitted an afternoon snack. Then, they are screamed at and disciplined for requesting something else to eat. There have been countless other times that Ms. Banks has witnessed teachers screaming at the students.

105.    The children are also denied access to the bathroom and to water breaks even though their requests are, more often than not, legitimate to the point where children have been forced to have accidents and then not permitted to go to the nurse to change and left to sit in the classroom in their soiled clothing.

106.    The brown children are also over-disciplined compared to their white counterparts and are forced to admit to wrongs that they did not actually commit in order to receive discipline.

107.    The brown children are more frequently sent to the office and more often denied access to the bathroom, water, snacks and other basic liberties and freedoms to which all human beings are entitled.

24

108.     The over-aggressive, discipline-focused, discriminatory manner by which the brown and black students are treated puts the brown and black children in a position where they have to defend themselves to their teachers, causing them to lash out in ways that are uncharacteristic – behaviors which they are again disciplined on the basis of.

109.     The students are also over-diagnosed, over treated for mental health and behavioral issues, and under afforded opportunities for advancement. In fact, the administrators and teachers have communicated that L.B. is a gifted and talented, advanced communicator and student. Still, they pressured her mother into agreeing to allow her to work with a behavioral specialist instead of putting her into a gifted and talent program. Both the specialist and Ms. Banks requested that the school test L.B. to make sure that she is on grade-level. Those requests went un-responded to. When Ms. Banks further requested information, she was told that L.B.was now being assessed as behind grade level, despite excellent, above-average marks on her report card and satisfactory marks on her most recent progress report (the highest mark available). Ms. Banks was provided with no information and no means or tools to rely upon in order to bring L.B. up to speed if she is, in fact, behind, rather than ahead of her peers.

110.     There are several other events and repeated acts which have taken and continue to take place at the school and to L.B. which one may consider to be "dog-whistle" racism. That is to say that L.B. understands she is being mistreated when the event occurs and/or that she is witnessing mistreatment, but given her age and experience she does not know why she is being mistreated or understand the emotional impact of the discriminatory environment she is expected, not only to tolerate, but to submit.

111.     The Incident and each subsequent incident, including refusing to prosecute Ms. Zawada, resulted in the infliction of severe emotional distress on L.B. and her mother. The

25

Defendants knew that tsuch distress was substantially certain to result from his actions and acted recklessly and in deliberate disregard of a high probability that emotional distress would follow.

112.    Subsequent to the attack, L.B. and Ms. Banks suffered ridicule, taunting, harassment as many HCPSS professionals, parents, neighbors and teachers learned about the Incident through word of mouth and of Ms. Banks pursuit of charges against Ms. Zawada.

113.    As such, the Incident became public.

114.    'It was an invasion of Ms. Banks and L.B.'s privacy by Ms. Zawada, HCPSS and all Defendants because they possessed no authority to assault L.B., to sanction the assault, and/or to fail to prosecute the assault on the basis that Ms. Zawada had endured enough in being terminated (which she was not), placing Ms. Banks and L.B. in a false light and attributing to the public characteristics, conduct and/or beliefs as to them which were false.

115.    The Defendants had actual knowledge and/or a reckless disregard of the falsity.

116.    The manner in which the Defendants publicized the false information would be highly offensive to a reasonable person.

117.    Ms. Banks did not consent to the Defendants' conduct. *See id.*

118.    The Defendants had no right to invade L.B.'s and Ms. Banks privacy.

119.    The Defendants acted with malice in invading Ms. Banks and L.B.'s privacy.

120.    The tortious actions of the Defendants caused L.B. and her mother to suffer damages, including emotional trauma, distress, damage to their reputation and the loss of wages.

## JURY DEMAND

Ms. Banks respectfully request a jury trial.

## PRAYER FOR RELIEF

Ms. Banks respectfully requests the following relief:

a.      A Declaratory Judgment forcing the Office of the State's Attorney and State's Attorney Richard Gibson to prosecute Ms. Zawada for the conduct alleged in this Complaint.

b.      A permanent injunction that bars Ms. Zawada from liberal access to the campus of Running Brook Elementary School.

c.      Compensatory damages for the physical injuries, emotional trauma, humiliation, distress, as well as for the loss of wages Ms. Banks suffered in tending to the matters alleged in this Complaint.

d.      Punitive damages for the physical injuries, emotional trauma, humiliation, distress, as well as for the loss of wages Ms. Banks suffered in tending to the matters alleged in this Complaint.

e.      In accordance with 42 U.S.C. § 1988 and/or any other relevant law, an award for costs, expenses and attorney's fees;

f.      Pursuant to MD SB629, the Access to Maryland Courts Act, now in committee, an award for costs, expenses and attorney's fees;

g.      Any other relief as this Honorable Court may deem just and deserving.

Respectfully submitted,

THE LAW OFFICE OF
CHRISTINA J. BOSTICK


___/s/ Christina J. Bostick_____
Christina J. Bostick, Esq.
CPF No.:  1012140073
*cjbostick@BostickLawOffice.com*
9520 Berger Road
Suite 212

Columba, Maryland 21046
1 (855) 267-8425 (t)
(443) 283-4295 (f)

*Attorney for Plaintiff*